**NOT FOR PUBLICATION**                                                           **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| J.A. AND J.A. o/bo/o B.A., | :<br>:<br>: |
| Plaintiffs, | : Civil Case No. 05-CV-05953 (FSH)<br>: |
| v. | : **OPINION**<br>: |
| MOUNTAIN LAKES BOARD OF EDUCATION | : Date: September 6, 2006<br>: |
| Defendant. | :<br>:<br>:<br>: |

**HOCHBERG, District Judge**

**I.    INTRODUCTION**

This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56(c). The Court has jurisdiction over this appeal of Administration Law Judge ("ALJ") Reiner's September 27, 2005 opinion under 20 U.S.C. §1415(i)(2), and the Court has made its determination after considering the written submissions of the parties and without oral argument pursuant to Fed.R.Civ.P. 78.

**II.   FACTUAL BACKGROUND**

B.A. is an eighteen year old student who was classified by the Boonton Township Child Study Team ("Team") as eligible for special-education related services beginning in October 2001, when he was in eighth grade. B.A.'s Individualized Education Program ("IEP") for the eighth grade provided that B.A. would receive study skills instruction one period per day in a

1

resource room and that he would attend regular education classes the rest of the day.[1]  On May 1, 2002, B.A.'s Team prepared his IEP for the 2002-2003 school year at Mountain Lakes High School; the Boonton Township Board of Education sends its high school students to Mountain Lakes High School pursuant to a sending agreement with the Mountain Lakes Board of Education ("Board").  The 2002-2003 IEP was comparable to B.A.'s previous IEP but also included in-class support for World Cultures and Spanish.

During a September 20, 2002 meeting, after B.A. began ninth grade at Mountain Lakes High School, the Team revised his IEP to provide in-class support in Language Arts and Social Studies as well as learning strategy instruction in a pullout resource room five times per week, taught by Diane Geveke, a certified teacher of the handicapped.  B.A. received instruction in mainstream general education classes, except for his learning strategies class.  B.A.'s IEP contained goals and objectives to address his organizational and planning skills needs, such as maintaining an orderly notebook, checking assignments after class, creating benchmark time lines for assignment completion, maintaining a homework schedule, asking more questions in class, preparing for tests, and arriving to class on time.  As well, the IEP contained goals and objectives for specific subjects: improving his grammar, proofreading, and organizing written

---

[1] B.A. had previously been tested for a learning disability by the Boonton Township Study Skills Team in the spring of 1999 when he was in fifth grade at the Plaintiffs' request, but the team determined that he did not need to be classified as having a learning disability in September 1999.  In 2000-2001, during B.A.'s seventh grade year, Plaintiffs requested that the Boonton Township Board of Education reevaluate B.A. through an independent evaluation.  During the summer of 2001, Balaban and Associates conducted an independent evaluation of B.A., consisting of educational, psychological, and other assessments.  The results of two cognitive evaluations—the Wechsler III and Woodcock Johnson III—indicated that there was a discrepancy between B.A.'s verbal skills and his written expression.  This led the Boonton Board of Education to classify B.A. under the "specific learning disability" category.

composition in language arts; retaining lesson concepts, using primary texts to organize open-ended questions, and using reference materials to research open-ended questions in social studies; and generalizing and applying scientific concepts in science.  B.A.'s accommodations included using visual tools and organizers for writing assignments, having access to class notes, extending time for tests, reducing certain writing assignments, and having computer access.  B.A. was also provided the opportunity to attend an after-school homework club for homework assistance staffed by a certified teacher, although he chose not to take advantage of this resource.  In March 2003, the school gave B.A. his own personal laptop, as previously requested by Plaintiffs.  B.A. performed well in his ninth grade classes, earning an "A" final grade in English, World Cultures, Wood Technology, Word Processing, Band, Human Development, and Physical Education and a "B" final grade in Math II Geometry and Biology Honors.  He also played football and lacrosse for Mountain Lakes High School.

On February 18, 2003, petitioners initiated a New Jersey Department of Education complaint investigation alleging that B.A. was not taught by a certified teacher in learning strategies and that Mountain Lakes High School did not fully implement B.A.'s goals and objectives nor provide the IEP accommodations.  After investigating the findings, the Department of Education found only one problem with the implementation of B.A.'s IEP: that the school district had erred in using a substitute teacher in the resource room for four days over the maximum twenty days allowed.  However, the Department noted that the School had remedied the problem.

B.A.'s IEP for tenth grade, dated June 18, 2003, called for B.A. to continue his learning strategies instruction in the pullout resource room and attend general maintenance education

classes for all other subjects, identified goals and objectives to improve his study skills, and set forth accommodations similar to those provided in B.A.'s ninth grade program to enhance his access to instruction. However, the IEP did not include a personal laptop for B.A. as well as other accommodations requested by Plaintiffs, including an extra set of books; Orton-Gilligham or Wilson reading instruction; alternative testing methods; and new instruction techniques on study skills, time management, and planning. On June 25, 2003, Plaintiffs wrote a letter to the Board rejecting B.A.'s IEP for tenth grade, and they sought help from the district in finding an out-of-district placement for B.A. On July 1, 2003, the Board notified Plaintiffs that they were not amenable to placing B.A. out of the district because they had offered B.A. a free appropriate public education ("FAPE") in the least restrictive environment in-district, as required by law. *See* 20 U.S.C. §1412(a). Thereafter, prior to the start of B.A.'s tenth grade in September 2003, Plaintiffs withdrew B.A. from Mountain Lakes High School and placed him in the Forman School, a residential, preparatory school in Litchfield, CT.

### III.   THE ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a due process challenge of the 2003-2004 IEP on June 28, 2004 with the New Jersey Office of Administrative Law.[2] After hearings on February 3, 4, 15, 16, 17, 18 and 22, March 9 and 21, May 4, and June 17, 2005, ALJ Elinor Reiner issued a 60-page decision on September 27, 2005 denying Plaintiffs reimbursement for their unilateral placement and holding that the Defendant complied with the requirements of IDEA, that the Mountain Lakes Board of

---

[2]Under the Individuals with Disabilities Education Act ("IDEA") and New Jersey regulations, disputes between parents of a disabled child and the school over the adequacy of the proposed IEP are to be resolved through due process hearings before an Administrative Law Judge of the New Jersey Office of Administrative Law. *See* 20 U.S.C. §1415(a)) and N.J.A.C. 6A:14-2.7.

Education provided B.A. with a FAPE, and that Forman was not an appropriate placement consistent with the IDEA. The ALJ reviewed 85 exhibits and heard testimony from 11 witnesses, including Anne Mucci, the Mountain Lakes Board of Education Supervisor of Instruction and Assistant to the Director of Special Services; Diane Geveke, B.A.'s ninth grade learning strategies teacher; Stephanie Pfau, B.A.'s ninth grade Language and Composition teacher; Maryann Albers, B.A.'s ninth grade Geometry teacher; Dr. Kathleen Rotter, a qualified expert in learning disabilities and special education programming; Susan Silverstein, Mountain Lakes Board of Education's Director of Special Services; J.A., B.A.'s mother; Joseph Plasner, the director and owner of Balaban and Associates, the company that J.A. selected to evaluate B.A., who issued a report on B.A. in 2001 based on two meetings; Katharine Sanders, a Learning Disabilities Teacher-Consultant in private practice who met with B.A. at Forman for five and a half hours; Melissa Swords Boyer, the Science Department Chairperson at Forman and a strategy and science teacher who did not have B.A. as her student other than in one class for three weeks when she was a substitute teacher; and Mae J. Balaban, the prior director of Balaban and Associates who did not take part in B.A.'s 2003 evaluation and who observed B.A. at Forman for four hours in a writing workshop, Spanish, Pre-Calculus, and English Honors.

     The ALJ's initial decision found that:

(1) The Board complied with all of the requirements of IDEA and the federal and state regulations promulgated thereunder;

(2) B.A.'s placement recommended by the Board for ninth grade was appropriate, clearly sufficient to confer some educational benefit in the least restrictive environment, and met his individual needs;

(3) The placement recommended by the Board for tenth grade was appropriate and more than sufficient to confer some educational benefit on B.A. in the least restrictive environment and to meet his individual needs;

      (4) The Board provided a FAPE to B.A.;

      (5) Forman is not an appropriate placement consistent with the IDEA, and the Board is not required to reimburse Plaintiffs for B.A.'s unilateral placement at Forman.

      Citing the testimony of B.A.'s teachers at Mountain Lakes High School, the ALJ found that B.A.'s ninth grade teachers—Diane Geveke, who taught learning strategies; Stephanie Pfau, who taught Language and Composition; and Maryann Albers, who taught Geometry—all credibly testified that B.A. made substantial progress in each of their classes and was functioning in conformity with the grade that they each gave him.  The ALJ highlighted that he was extremely impressed with Ms. Geveke's testimony regarding her many efforts to help B.A. deal with his disability, including teaching numerous learning strategies for him to use to help him organize his work and offering assistance to ensure that he completed his quizzes and tests, answered his homework questions, and learned study skills.  The ALJ highlighted B.A.'s strong grades during ninth grade—an "A" in English, an "A" in World Cultures, a "B" in Geometry, a "B" in Honors Biology, and As in all of his other classes.  The ALJ rejected Plaintiffs' argument that B.A. should have initially received his own personal computer for his classes because he not only had access to a computer in each of his classrooms but also had a laptop from the library available to him all day.  The ALJ noted that the Board provided B.A. a laptop for his personal use mid-year of his ninth grade and that the Forman school did not provide B.A. a laptop at all.

      Further, the ALJ found there was no evidence that B.A. did not function well with his peers, highlighting that he was a member of the football and lacrosse teams and that his teachers testified that he was a leader, respectful, and engaged in his classes.  The ALJ found that the contrary testimony offered by Plaintiffs was totally unpersuasive.  The ALJ emphasized that the

testimony of Joseph Plasner and Mae Balaban was not especially credible because Plasner had not seen B.A. since August 2001 and only testified as to what he "believed" B.A. had experienced and Balaban never had any personal interaction with B.A.

The ALJ also highlighted that Dr. Rotter, an expert in learning disabilities and special education programming, testified that B.A.'s accommodations were reasonable and in keeping with his "mild level" of disability. The ALJ concluded that while B.A. may have had some difficulty in writing and mild dysgraphia, it did not interfere with him appropriately being placed in a regular education setting with the supports he received. Specifically, B.A.'s schedule afforded him an education alongside his non-disabled peers in the least restrictive environment so that he could benefit from social cues and interaction. The ALJ concluded that it was "unbelievable" that a student in a competitive school district—enrolled in college preparatory courses, honors classes, and advanced placement classes—was not receiving more than a *de minimis* benefit from his education at Mountain Lakes High School.[3]

Plaintiffs filed this complaint on December 23, 2005. Plaintiffs request that the Court declare that Defendant violated the requirements of IDEA by deciding to provide B.A. with the same program and services for 2003-2004 that had failed him previously, failing to have a representative of the board with the authority to commit resources present at the IEP meetings, failing to provide B.A. with a FAPE for the school year 2003-2004, and failing to provide placement in the least restrictive environment for the 2002-2003 school year. *See* Complaint at

---

[3]The ALJ noted that Mountain Lakes High School continuously ranks among the most competitive high schools in New Jersey. It offers 14 Advanced Placement courses and has numerous athletic, co-curricular, and extracurricular activities. Ninety percent of its students attend four-year colleges.

14. Plaintiffs argue that the ALJ erred for reasons including the failure to make sufficient findings of fact regarding B.A.'s unique needs; failure to consider the fact that the parents notified the district of their intent to place B.A. out-of-district after the June 2003 IEP meeting and sought the district's help in finding such a program; failure to consider that Dr. Rotter, an expert for the district, was not a credible witness because she gave conflicting testimony; failure to consider the testimony of Plaintiffs' witness, Dr. Balaban, about a program that would meet B.A.'s needs; and the denial of reimbursement to Plaintiffs for tuition at the Forman School since September 2003. *Id.* at 14-15. As well, Plaintiffs request this Court to award the cost "of the program and the independent testing of" and "reasonably (sic) attorney fees." *Id.* at 15. Plaintiffs moved for summary judgement reversing the ALJ's decision on April 28, 2006. Defendant cross-moved for summary judgment affirming the ALJ's decision on May 17, 2006.

## IV.   REVIEW OF ALJ'S DECISION UNDER IDEA

### A.   Standard of Review Applied to an ALJ Decision

The standard of review which the Court considers an appeal of a state administrative decision under the IDEA differs from the typical standard applied on summary judgment. *See M.A. v. Voorhees Township Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002). In the Third Circuit, the court must review the findings of fact by an ALJ in IDEA cases according to a modified *de novo* review, giving "due weight" to the underlying administrative findings. *See, e.g., Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004); *S.H. v. State Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 269-70 (3d Cir. 2003); and *Oberti*

*v. Bd. of Educ. of the Borough of the Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir. 1993).[4] Under the modified *de novo* review, the court defers to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence. *S.H.*, 336 F.3d at 270. Where the court relies on additional evidence, it is free to accept or reject the agency findings depending upon whether those findings are supported by the new expanded record and whether they are consistent with the IDEA requirements. *Id.*

However, if the district court does not hear additional evidence, the court must find factual support in the record for any conclusions contrary to the ALJ's. *See S.H.*, 336 F.3d at 270 and *Oberti*, 995 F.2d at 1220. Specifically, if an administrative agency heard live testimony and found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight, and the District Court must accept the agency credibility determination "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." *Shore*, 381 F.3d at 199. Further, the court "must explain why it does not accept the ALJ's findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *S.H.*, 336 F.3d at 270. *See also Carlisle Area Sch. v. Scott P.,* 62 F.3d 520, 529 (3d Cir. 1995).

In *Shore*, the Third Circuit reversed a district court decision that did not give proper deference to an ALJ determination that the school district had complied with the IDEA. 381

---

[4] The IDEA sets forth the scope of review for an appeal of an administrative decision: "In any action brought under this paragraph, the court - (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(I )(2)(B).

F.3d at 199. Both the district court and the ALJ were confronted with conflicting opinions by experts, and the district court—without hearing further testimony—rejected the ALJ's decision to credit the school district's witnesses. The Third Circuit held that the task of evaluating conflicting opinions falls to the ALJ in whose presence the testimony was given. *Id.* at 201. Although the court gives due weight to the ALJ's factual findings, the court reviews the ALJ's legal determinations de novo. *See, e.g., P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003); *Township of Bloomfield Bd. of Educ. v. S.C.o/b/o T.M.*, 2005 WL 2320029, *9 (D.N.J. Sept. 22, 2005); *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 102 (2d Cir. 1998).

**B.     IDEA Requirements**

1.      "Free Appropriate Public Education"

The IDEA was enacted to ensure that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *M.A.*, 202 F.Supp.2d at 360 (D.N.J. 2002) (*quoting* 20 U.S.C. §1400(d)(1)(A)). FAPE is defined as special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [an] individualized education program." 20 U.S.C. §1401(9). In *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982), the Supreme Court held that a state satisfied the FAPE requirement when that state provided "personalized instruction with sufficient support services to permit the child to benefit

10

educationally from that instruction." Although the state must offer access to education that is "meaningful," *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir.1999), it does not need to offer education that "maximize[s] each child's potential," *Rowley*, 458 U.S. at 198. *See also M.A.*, 202 F. Supp. 2d at 361 (D.N.J. 2002). The Third Circuit has highlighted that the educational benefit conferred upon a child must be more than "de minimis" or trivial, *see Polk v. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 180 (3d Cir. 1888), *cert. denied*, 488 U.S. 1030 (1989), and that the student's capabilities as to both "type and amount" of learning must be analyzed. *Ridgewood*, 172 F.3d at 248. When considering whether an IEP confers a meaningful benefit, "adequate consideration [must be given] to...[the] intellectual potential" of the individual student to determine if he is receiving a FAPE, and a "student-by-student analysis that carefully considers the student's individual abilities" is required. *Id*. at 248.

   IDEA requires that a child study team must design an IEP for each disabled child that sets forth the goals and objectives which will be used to determine whether the child is receiving a FAPE. *See* 20 U.S.C. §1414(d) and *S.H.*, 336 at 264. The child study team consists of the child's parents, the child's regular and special education teachers, a curriculum specialist from the school district, and in addition, if requested by the parents or the school, anyone with special knowledge or expertise related to the child's education. *See* 20 U.S.C. §1414(d)(1)(B) and *S.H.*, 336 F.3d at 264-265. The child study team is responsible for evaluating the student and determining his eligibility for special education and related services under the IDEA and has a continued responsibility for developing, implementing, and monitoring the effectiveness of his IEP. *See Oberti,* 995 F.2d at 1208 n. 2. The IEP is reviewed at least annually to determine

whether the child is reaching the stated goals and is revised as necessary. *See* 20 U.S.C. §1414(d)(4) and *S.H.*, 336 F.3d at 265.

2.      "Least Restrictive Environment"

IDEA also requires that states give disabled children a FAPE provided in the "least restrictive environment." *See* 20 U.S.C. §1412(a)(5)(A).  The least restrictive environment "is the one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle,* 62 F.3d at 535.  This requirement establishes a strong preference for mainstreaming disabled children by educating them with non-disabled children to the maximum extent possible. *See, e.g., S.H.*, 336 F.3d at 265 and *T.R. v. Kingwood Twp. Bd. Of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000) (finding that the mainstreaming component of the IDEA requires that a disabled child is placed in the "least restrictive environment that will provide him with a *meaningful* educational benefit") (emphasis added).  Many courts have interpreted the IDEA to articulate a strong congressional preference for "integrating children with disabilities in regular classrooms." *Oberti*, 995 F.2d at 1213-14.

In *Oberti*, the Third Circuit articulated a two-part test to determine whether a school district is in compliance with the IDEA's mainstreaming requirement.  First, the court must determine whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily. *Id.* at 1215.  The court should consider three factors: (1) whether the school has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child in a regular classroom with supplementary aids

and services, as compared to the benefits provided in a segregated special education classroom; and (3) the possible negative effect the child's inclusion may have on the education of the other children in the regular classroom. *Id.* at 1217-18. Second, if the court finds placement outside a regular classroom to be necessary for the child's educational benefit, the court must decide whether the school has mainstreamed the child to the maximum extent appropriate. *Id.* at 1215, citing *Daniel R.R. v. State Bd. of Educ.,* 874 F.2d 1036, 1048 (5th Cir. 1989). *See also T.R.*, 205 F.3d at 579-80 (requiring the school district to consider a continuum of possible alternative placement options when formulating an IEP). This analysis requires an inquiry into whether the school has made efforts to include the child in school programs with non-disabled children whenever possible. *Oberti*, 995 F.2d at 1215.

**C.     Analysis**

In deciding this case, this Court has considered the lengthy record, including testimony from 11 witnesses and 85 exhibits, as well as the submissions from the parties. To assess whether Mountain Lakes complied with IDEA, this court will analyze: 1) whether the Board provided B.A. a FAPE for the 2002-2003 school year in the least restrictive environment; and 2) whether B.A.'s recommended 2003-2004 IEP would have provided him a FAPE in the least restrictive environment. In this case, the testimony and evidence in the record clearly support the ALJ's determination that the Board provided B.A. with a FAPE in the least restrictive environment for 2002-2003 (ninth grade) and that B.A.'s IEP for 2003-2004 (tenth grade) also provided B.A. with a FAPE in the least restrictive environment. Because this Court concludes that the Board met IDEA requirements and provided B.A. a FAPE in the least restrictive

environment, it does not need to reach the issue of whether the Forman School is an appropriate placement under IDEA and takes no position on this section of the ALJ's holding.[5]

1.      The Board provided B.A. a FAPE in the least restrictive environment in 2002-2003.

The testimony and evidence in the record illustrate that the Board provided B.A. a FAPE in the least restrictive environment for 2002-2003 (B.A.'s ninth grade).  B.A.'s 2002-2003 IEP included in-class support for World Cultures, Spanish, Language Arts, and Social Studies.  The IEP contained goals and objectives to address his organizational and planning skills needs, such as maintaining an orderly notebook, checking assignments after class, creating benchmark time lines for assignment completion, maintaining a homework schedule, asking more questions in class, preparing for tests, and arriving to class on time.  As well, the IEP contained goals and objectives for specific subjects: improving his grammar, proofreading, and organizing written composition in language arts; retaining lesson concepts, using primary texts to organize open-ended questions, and using reference materials to research open-ended questions in social studies; and generalizing and applying scientific concepts in science.  B.A.'s accommodations also included using visual tools and organizers for writing assignments, having access to class notes, extending time for tests, reducing certain writing assignments, and having computer

---

[5] Because this Court finds that B.A.'s IEP for 2003-2004 provided B.A. with a FAPE in the least restrictive environment, Plaintiffs' request for reimbursement of tuition at Forman since September 2003 is denied.  *See* N.J.A.C. 6A:14-2.10 (holding that a "district board of education shall not be required to pay for the cost of education, including special education and related services, of a student with a disability if the district made available a free, appropriate public education and the parents elected to enroll the student in a nonpublic school, an early childhood program, or an approved private school for students with disabilities.")  The Plaintiffs' request for reimbursement of costs for B.A.'s testing and independent assessment and reasonable attorney fees is also denied.

access. The record, especially the testimony from B.A.'s teachers, illustrates that items contained in B.A.'s IEP were adequately implemented. B.A. was also given the opportunity to attend an after-school homework club for homework assistance staffed by a certified teacher, although he chose not to take advantage of this resource.

During B.A.'s ninth grade, he received instruction in mainstream general education classes, except for his learning strategies instruction in a pullout resource room five times per week, taught by Diane Geveke, a certified teacher of the handicapped. The Board's witnesses testified credibly that B.A. flourished in ninth grade, earning good grades in college preparatory and honors classes despite his mild disability. His Learning Strategies, Language and Composition, and Geometry teachers all credibly testified that B.A. made substantial progress in each of their classes and was functioning in conformity with the grade that they each gave him; B.A. earned an "A" in Learning Strategies, an "A" in Language in Composition, and a "B" in Geometry. B.A. also received an "A" in World Cultures, a "B" in Honors Geometry, and As in all his other classes. Although Plaintiffs argue that B.A.'s strong grades were a result of grade inflation at Mountain Lakes High School or falsification, there is simply no credible evidence in the record to support such a contention. As well, Mountain Lakes High School continuously ranks among the most competitive high schools in New Jersey with 90% of its students attending four-year colleges. The testimony of B.A.'s teachers about his strong performance and good demeanor in their classes at a high school such as Mountain Lakes supports the ALJ's conclusion that B.A. received significant educational benefit in the ninth grade.[6]

---

[6]There is no credible evidence in the record to support Plaintiffs' claims that B.A. was depressed and did not get along with his peers; B.A. was a member of the football and lacrosse

15

Ms. Geveke, pursuant to B.A.'s IEP, taught B.A. numerous learning strategies to help him organize his work and to ensure that he completed his quizzes and tests, answered his homework questions, and learned study skills. Although Plaintiffs argue that B.A. should have received his own personal computer for his classes at the start of ninth grade, B.A. not only had access to a computer in each of his classrooms but also had a laptop from the library available to him all day. As well, the Board provided B.A. a personal laptop mid-year of his ninth grade. A school board satisfies its obligation to provide a FAPE by giving "an education specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the institution." *T.R.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Rowley*, 458 U.S. at 188-189). The record indicates that the Board easily met this requirement.

The Board also provided a FAPE to B.A. in the least restrictive environment. Dr. Rotter, an expert in learning disabilities and special education programming, testified that B.A.'s accommodations were reasonable and in keeping with his "mild level" of disability. Although B.A. may have had some difficulty in writing and mild dysgraphia, it did not interfere with him appropriately being placed in a regular education setting with the supports he received. B.A.'s schedule afforded him an education alongside his non-disabled peers in the least restrictive environment so that he could benefit from social cues and interaction. The Board easily meets the Third Circuit's two-prong *Oberti* test used to determine whether a school district is in

---

teams as well as a leader in some of his classes, and his teachers indicated that he was respectful and engaged in their classes. The ALJ found the contrary testimony offered by the Plaintiffs to be "totally unpersuasive."

compliance with IDEA's mainstreaming requirement.  First, the Board made reasonable efforts to accommodate B.A. in a regular classroom by providing him in-class support for World Cultures, Spanish, Language Arts, and Social Studies.  The Board also provided B.A. visual tools and organizers for writing assignments, access to class notes, extended time for tests, reduced writing assignments, and computer access in his regular classes.  Second, B.A.'s instruction in a pullout resource room five times per week, taught by a certified teacher of the handicapped, helped B.A. with learning strategy instruction that was not offered to students in the regular classes.  The Board mainstreamed B.A. to the maximum extent appropriate in regular classes, and B.A.'s resource room attendance helped him address organizational and planning deficiencies.

2.  B.A.'s IEP for 2003-2004 (tenth grade) provided him a FAPE in the least restrictive environment.

The testimony and evidence in the record illustrate that B.A.'s IEP for 2003-2004 (tenth grade) provided him a FAPE in the least restrictive environment.  B.A.'s tenth grade IEP, dated June 18, 2003, called for B.A. to continue his learning strategies instruction in the pullout resource room, attend general maintenance education classes for all other subjects, follow goals and objectives to improve his study skills, and set forth accommodations similar to those provided in B.A.'s ninth grade program to enhance his access to instruction.  Although this IEP did not give B.A. a personal laptop, B.A. had access to a computer in each of his classrooms and also had a laptop from the library available to him all day.  The failure to provide a personal laptop in B.A.'s tenth grade IEP does not rise to the failure to provide a FAPE.  Similarly, in their Complaint, Plaintiffs argue that B.A.'s tenth grade IEP did not include other accommodations they requested, including an extra set of school books to keep at home; Orton-Gilligham or Wilson reading

17

instruction at school; different alternative teaching or testing techniques from B.A.'s previous IEP; and instructional study skills.  *See* Plaintiff's Complaint at 8-9, ¶ 23.  However, Plaintiffs were offered the videotapes of Orton-Gilligham or Wilson reading instruction for B.A. to use at home as well as numerous teaching, testing, and study skills techniques that B.A.'s teachers testified had worked well for B.A. in the ninth grade.  The Plaintiffs' complaints again do not rise to the level of the Board's failure to provide B.A. a FAPE.

## V. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted, Plaintiffs' Motion for Summary Judgment is denied, and the ALJ's September 27, 2005 decision is affirmed.  An appropriate order will issue.

 /s/  Faith S. Hochberg          

**HON. FAITH S. HOCHBERG, U.S.D.J.**